UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| V. | NO. 12-1 |
| KEVIN JACKSON | SECTION "F" |

<u>ORDER & REASONS</u>

Before the Court is Kevin Jackson's motion to sever.  For the reasons that follow, Jackson's motion is DENIED.

<u>Background</u>

On October 18, 2012, the Federal Grand Jury returned a twenty-two count superceding indictment, charging defendants Walter Porter, a/k/a "Urkel," a/k/a "Moonie," Andre Hankton, Nakia Hankton, Shirley Hankton, Telly Hankton, a/k/a "Third," a/k/a "Wild," Thomas Hankton, a/k/a "Squirt," Troy Hankton, George Jackson, a/k/a "Black," Kevin Jackson, Netthany Schexnayder, Derrick Smothers, a/k/a "Dump," Terrell Smothers, and Sana Johnson with various violations of federal laws.  The indictment alleges that beginning on a date unknown, but prior to January 1996, and continuing to the date of the superceding indictment, various defendants were part of a criminal enterprise that historically encompassed the Uptown Central City area of New Orleans, primarily concentrated in the area bordered by Jackson Avenue, St. Andrew Street, Simon Bolivar, and Oretha Castle Haley.  Specifically, the defendants are charged as follows:

-1-

- **Count 1: RICO Conspiracy**
  Defendants Nakia Hankton, Shirley Hankton, Telly Hankton, Thomas Hankton, Troy Hankton, George Jackson, Walter Porter, Derrick Smothers, and Terrell Smothers were charged with conspiring to conduct the affairs of an enterprise through a pattern of racketeering activity, consisting of multiple acts involving murder, bribery, trafficking in controlled substances, and possession with the intent to distribute controlled substances, including cocaine base (crack cocaine), cocaine hydrochloride (powder cocaine), heroin, and marijuana.[1]

- **Count 2: Conspiracy to Distribute Controlled Substances**
  Defendants Nakia Hankton, Shirley Hankton, Telly Hankton, Thomas Hankton, Troy Hankton, George Jackson, Derrick Smothers, and Terrell Smothers did knowingly and intentionally combine, conspire, and confederate and agree with each other to distribute 280 grams or more of cocaine base (crack cocaine), five kilograms or more of cocaine hydrochloride (powder cocaine), one kilogram or more heroin, and a quantity of marijuana.

- **Count 3: Conspiracy to Possess Firearms**
  Defendants Andre Hankton, Nakia Hankton, Telly Hankton, Thomas Hankton, Troy Hankton, George Jackson, Kevin Jackson, Derrick Smothers, Terrell Smothers, and Walter Porter did knowingly and intentionally combine, conspire, confederate and agree with each other to, during and in relation to a crime of violence and a drug trafficking crime, use, carry, and possess firearms in furtherance of a crime of violence and drug trafficking.

---

[1] Notably, the indictment alleges 101 overt acts that were committed by the defendants in furtherance of the conspiracy and to accomplish the objects of the conspiracy.

- **Count 4: Conspiracy to Obstruct Justice**
  Defendant Walter Porter did knowingly and intentionally combine, conspire, confederate and agree with other persons, to corruptly obstruct, influence, and impede an official proceeding by attempting to cause K.E. to falsely claim that G.H. did not possess a firearm on June 23, 2007, but rather that K.E. possessed the firearm.

- **Count 5: Murder in Aid of Racketeering**
  Defendants Andre Hankton and Telly Hankton as consideration for the receipt of, and as consideration for a promise and an agreement to pay, and for the purpose of gaining entrance to and maintaining and increasing position in the enterprise, murdered Darnell Stewart.

- **Count 6: Causing Death Through the Use of a Firearm**
  Defendants Andre Hankton and Telly Hankton did knowingly use and carry a firearm during and in relation to a crime of violence and drug trafficking crime.

- **Count 7: Possession of a Short-Barreled Shotgun**
  Defendant Andre Hankton knowingly possessed a Winchester 20 gauge short-barreled shotgun, which is not registered to him.

- **Count 8: Murder in Aid of Racketeering**
  Defendants Telly Hankton, Walter Porter, and Kevin Jackson did murder Jesse Reed.

- **Count 9: Causing Death Through the Use of a Firearm**
  Defendants Telly Hankton, Walter Porter, and Kevin Jackson did knowingly use and carry a firearm during and in relation to a crime of violence and drug trafficking crime.

- **Count 10: Murder in Aid of Racketeering**
  Defendants Walter Porter and Thomas Hankton as consideration for the receipt of, and as consideration for a promise and an agreement to pay, and for the purpose of gaining entrance to and maintaining and increasing position in the enterprise, murdered Hasan

>    Williams.

- **Count 11: Causing Death Through the Use of a Firearm**
  >    Defendants Walter Porter and Thomas Hankton did knowingly use and carry a firearm during and in relation to a crime of violence and drug trafficking crime.

- **Count 12: Felon in Possession of a Firearm**
  >    Defendant Walter Porter, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly posses in and affecting interstate commerce an unknown make and model of a firearm.

- **Count 13: Assault with a Dangerous Weapon in Aid of Racketeering**
  >    Defendants Thomas Hankton, Telly Hankton, and Walter Porter did commit an assault with a dangerous weapon on J.M.

- **Count 14: Use and Carrying of a Firearm During and in Relation to a Crime of Violence and a Drug Trafficking Crime**
  >    Defendants Thomas Hankton, Telly Hankton, and Walter Porter did knowingly use and carry a firearm during and in relation to a crime of violence and drug trafficking crime.

- **Count 15: Murder in Aid of Racketeering**
  >    Defendant Walter Porter as consideration for the receipt of, and as consideration for a promise and an agreement to pay, and for the purpose of gaining entrance to and maintaining and increasing position in the enterprise, murdered Curtis Matthews.

- **Count 16: Causing Death Through the Use of a Firearm**
  >    Defendant Walter Porter did knowingly use and carry a firearm during and in relation to a crime of violence and drug trafficking crime.

-4-

- **Count 17: Conspiracy to Commit Misprision of a Felony**
  Defendants Thomas Hankton, Netthany Schexnayder, and Sana Johnson did knowingly and willfully combine, conspire, and agree with each other to knowingly commit the crime of misprision of a felony, having knowledge of the actual commission of felonies.

- **Count 18: Accessory After the Fact to Murder**
  Defendants Thomas Hankton, Netthany Schexnayder, and Sana Johnson, knowing that an offense against the United States has been committed, received, relieved, comforted, and assisted the offender, Telly Hankton, in order to hinder and prevent the offender's apprehension, trial, and punishment.

- **Count 19: Felon in Possession of a Firearm**
  Defendant Walter Porter, having been previously convicted of a crime punishable by a term exceeding one year, did knowingly possess in and affecting interstate commerce, ammunition and a Romarm 7.62 caliber semi-automatic assault rifle.

- **Count 20: Felon in Possession of a Firearm**
  Defendant Walter Porter, having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce, ammunition and a model 17, 9 mm Glock semi-automatic handgun.

- **Count 21: Money Laundering Conspiracy**
  Defendants Telly Hankton, Thomas Hankton, and Shirley Hankton, did knowingly and intentionally combine, conspire, confederate and agree with each other to knowingly and willfully conduct and attempt to conduct financial transactions, which involved the proceeds of a specified unlawful activity.

- **Count 22: Perjury**
  Defendant Shirley Hankton, under oath and duly sworn, did knowingly and unlawfully and

>            contrary to oath make certain material false
>            statements to a United States Grand Jury.

In summary, over a period of at least sixteen years, and involving fourteen defendants, the indictment alleges charges of a most serious, wicked, and alarming nature; the murder of four individuals, assault with a deadly weapon, possession and distribution of a significant quantity of various drugs (crack cocaine, powder cocaine, heroin, and marijuana), a variety of weapons offenses (a 20 gauge short-barreled shotgun, Romarm 7.62 caliber semi-automatic assault rifle, and 9 mm Glock semi-automatic handgun), money laundering, lying under oath, and obstruction of justice.

Reflecting the seriousness of the charges in this case, five of the defendants--Andre Hankton, Telly Hankton, Walter Porter, Kevin Jackson, and Thomas Hankton, each charged with murder--are eligible to face the death penalty if convicted. Moreover, on December 5, 2012, the Court ordered that an anonymous jury will be used for the trial in this case. In an extensive opinion, the Court explained that an anonymous jury is necessary based on the Krout factors,[2] relevant case law, and the allegations against the

---

[2] These include:
 (1) The defendants' involvement in organized crime;
 (2) The defendants' participation in a group with the capacity to harm jurors;
 (3) The defendants' past attempts to interfere with the judicial process or witnesses;
 (4) The potential that, if convicted, the defendants will suffer

defendants.

One of the death-eligible defendants, Kevin Jackson, now moves to sever his case from that of his codefendants. The Court has already denied motions to sever filed by two of the non-death eligible defendants, Terrell Smothers and Troy Hankton. Nonetheless, Jackson contends that his trial should be severed because a joint trial would cause him irreparable prejudice and because the prolonged capital authorization process violates his speedy trial rights.

### Law and Application

Rule 8(b) of the Federal Rules of Criminal Procedure states:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

When defendants are indicted together, joint trials are favored, because "[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro v. United States, 506 U.S. 534, 537 (1993) (internal quotation marks and citation omitted). This is

---

       a lengthy incarceration and substantial monetary penalties; and
    (5) The presence of extensive publicity that could enhance the possibility that the jurors' names would become public and expose them to intimidation and harassment.
   United States v. Krout, 66 F.3d 1420, 1427 (5th Cir. 1995).

especially true in a conspiracy case.  <u>United States v. Perez</u>, 489 F.2d 51, 65 (5th Cir. 1973).

However, recognizing that joinder might in some cases prejudice a defendant, or even the government, Rule 14 of the Federal Rules of Criminal Procedure invests the Court with the discretion to "sever the defendants' trials, or provide any other relief that justice requires."  A severance is appropriate under Rule 14 only where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  <u>Zafiro</u>, 506 U.S. at 539.  Severance could be appropriate, for example, where evidence that is probative of one defendant's guilt but inadmissible against another defendant presents a risk of prejudice.  <u>Id.</u>  Severance should not be granted where less drastic measures, such as curative jury instructions, will suffice.  <u>Id.</u>  Finally, the Court notes that motions to sever are rarely granted, and a decision to deny such a motion will be reviewed on appeal only for abuse of discretion.  <u>Perez</u>, 489 F.2d at 65.

Kevin Jackson seeks to be tried separately from his codefendants.  Although Jackson is himself death-eligible, he contends that without a severance from other more culpable codefendants, a jury will be unable to fairly judge his guilt or innocence.  Jackson asserts that all of the charges against him

arise out of a single incident, and notes that he is not charged in Counts 1 and 2, the RICO and drug conspiracies.  He contends that the jury will impermissibly consider evidence about "Telly Hankton's 20-year reign of terror over an entire neighborhood" and that he will suffer unfair prejudice as a result.  The Court disagrees.

The Court rejects Jackson's submission that evidence related to the other crimes allegedly committed by Telly Hankton and the members of his criminal enterprise will be inadmissible against him; although Jackson is not charged with participating in the RICO or drug conspiracies, he is, notably, charged with murder in aid of racketeering, conspiracy to possess firearms, and causing death through use of a firearm, which require the Government to present much of the same evidence.  Moreover, neither Jackson or this Court can say now what will or will not be let into evidence at trial.  The Court also rejects Jackson's contention that its order for an anonymous jury compels the conclusion that a severance is warranted.  As the Court already explained in its order denying Terrell Smothers' and Troy Hankton's motions for severance,[3] any risk of prejudice that might possibly arise at trial will be cured by the Court through conscientious and less drastic measures than

---

[3] Although Smothers and Hankton moved to sever in August and September, respectively, Jackson waited until October to file his motion, and then later requested an extension of the hearing date.

severance, including cautioning jury instructions and an intense jury selection process.[4]  See id.

Jackson contends that his case is analogous to United States v. McCrae, 702 F.3d 806 (5th Cir. 2012), where the Fifth Circuit held that a severance was warranted.  The Court is not convinced.  In McRae, the Fifth Circuit considered the appeals of three New Orleans Police Officers, David Warren, Gregory McRae, and Travis McCabe, tried jointly and convicted for charges related to the death of Henry Glover.  Id. at 810-11.  Warren appealed the district court's denial of his repeated motions to sever.  Id.  Warren had been charged with shooting Glover while guarding a police substation in the wake of Hurricane Katrina, while McRae and McCabe were charged with orchestrating a gruesome coverup that included burning Glover's body and falsifying a police report after the shooting.  Id. at 821.  The Fifth Circuit held that Warren's case presented the rare situation warranting severance, and vacated Warren's convictions and sentences and remanded for a new trial.  Id. at 828.  The court reasoned that a marginal relationship existed between the charges and evidence against Warren and that against his codefendants; that a significant difference existed between the simplicity of the underlying charges against Warren and the crimes alleged against his codefendants; and that the charges

---

[4]  As counsel obviously are aware, the use of an anonymous jury, under proper case-specific circumstances, is hardly unknown or unusual.

and evidence against the codefendants, from which Warren was disassociated, were highly inflammatory and prejudicial in nature. Id.  Here, unlike in the case of Warren, the charges and evidence against Jackson and his codefendants are closely related; Jackson is charged with the most serious of the offenses, specifically, murder; and, as already discussed, Jackson fails to identify inflammatory and prejudicial evidence that will necessarily be inadmissable against him at trial.  Moreover, in McCrae, the Fifth Circuit specifically held that the district court did not abuse its discretion in denying Warren's motions to sever raised before trial.  Id.

Finally, Jackson contends that the prolonged capital authorization process necessitated by joinder abridges his constitutional right to a speedy trial.  Once again, the Court disagrees.  Contrary to Jackson's contentions, there is no indication that a severance would affect the expediency of the authorization process.  Neither is there any support for Jackson's assertion that he may "waive" his right to the authorization process and submit himself to capital punishment in exchange for an earlier trial date.  And although Jackson purports to assert his right to a speedy trial, the Court notes that Jackson's own actions have caused many of the delays in this case. Jackson has filed several pretrial motions, has repeatedly requested extensions of deadlines, has joined in two motions to continue the pretrial

conference and trial dates, and has even agreed to the current scheduling order, which sets the trial for 180 days from the Attorney General's final decision on whether to seek the death penalty. The record strongly suggests that Jackson does not seriously wish to be tried promptly. See United States v. Frye, 489 F.3d 201, 212 (5th Cir. 2007)(holding that Frye had not diligently asserted his speedy trial right where he repeatedly moved for continuances).[5]

Jackson fails to demonstrate any specific or discrete risk to a trial right or that the jury will be unable to reliably judge his

---

[5] The Court doubts that Jackson has properly asserted his 6th Amendment speedy trial right. See United States v. Parker, 505 F.3d 323, 330 (5th Cir. 2007)(contrasting Parker's "first affirmative indication that he wanted to proceed to trial" from the first time "he affirmatively asserted his right to a speedy trial"); see also Frye, 489 F.3d at 211 (a formal assertion of the speedy trial right generally takes the form of either an objection to a continuance or a motion asking to go to trial). Rather than seriously demanding to proceed to trial promptly, Jackson merely references his speedy trial right in support of his request for a severance. See Frye, 489 F.3d at 212. However, out of an abundance of caution, and even though Jackson fails to separately brief the issue, the Court finds that any speedy trial claim fails under the Barker balancing test. In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court outlined four factors to consider in assessing whether a defendant's right to a speedy trial has been violated: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the actual prejudice to the defendant. Although Jackson was indicted in October 2012, the seriousness of the charges and the complexity of this case are valid and patently obvious reasons justifying delay. Jackson has not diligently asserted his speedy trial right for the reasons described above, and Jackson fails to show actual prejudice. Id.; see Parker, 505 F.3d at 328 (defendant must show actual prejudice unless the first three Barker factors weigh heavily in his favor).

guilt or innocence should he be tried jointly with his various codefendants.  <u>See</u> <u>Zafiro</u>, 506 U.S. at 539.  Accordingly, Jackson's motion to sever is DENIED.

New Orleans, Louisiana, January 13, 2014

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE