UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

v.                                          NO. 12-01

HOWARD ET AL.                               SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court are nine motions: (1) Shirley Hankton's
motion to sever; (2) Nakia Hankton's motion to sever; (3) Andre
Hankton's motion to sever; (4) Walter Porter's motion to dismiss
indictment or, alternatively, to sever Counts 4, 14, 21, and 22;
(5) Walter Porter's motion to sever from the indictment; (6) Thomas
Hankton's motion to sever; (7) Telly Hankton's motion to sever; (8)
Walter Porter's motion to sever from Thomas Hankton and Telly
Hankton in Counts 15 and 16; and (9) Kevin Jackson's motion for
reconsideration of denial of earlier motion to sever.

For the reasons that follow, the motions are DENIED.

**Background**

On June 19, 2014, a federal grand jury returned a 24-count
third superseding indictment, charging 13 defendants[1] with
violations of federal criminal laws. The charges include: RICO

---

[1] The 13 defendants charged in the third superseding
indictment are Walter Porter a/k/a "Urkel" a/k/a "Moonie"; Andre
Hankton a/k/a "Reese"; Nakia Hankton; Shirley Hankton; Telly
Hankton a/k/a "Third" a/k/a "Wild" a/k/a "Red"; Thomas Hankton
a/k/a "Squirt"; Troy Hankton; George Jackson a/k/a "Black"; Kevin
Jackson a/k/a "Kev"; Netthany Schexnayder; Derrick Smothers a/k/a
"Dump"; Terrell Smothers; and Sana Johnson.

1

conspiracy, in violation of 18 U.S.C. § 1962(d);[2] conspiracy to distribute drugs (crack, powder cocaine, heroin, and marijuana), in violation of 21 U.S.C. § 846; conspiracy to possess firearms, in violation of 18 U.S.C. § 924(o); conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k); five counts of murder in aid of racketeering, and aiding and abetting, in violation of 18 U.S.C. §§ 1959(a)(1) and 2; six counts of causing death through the use of a firearm, and aiding and abetting, in violation of 18 U.S.C. §§ 924(j)(1) and 2; possession of a short-barreled shotgun, in violation of 26 U.S.C. § 5861(d) and 5871; three counts of felon in possession of a firearm, and aiding and abetting, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2; assault with a dangerous weapon in aid of racketeering and aiding and abetting, in violation of 18 U.S.C. §§ 1959(a)(3) and 2; using and carrying a firearm during and in relation to a crime of violence and drug trafficking crime and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2; conspiracy to commit misprision of a felony, in violation of 18 U.S.C. § 371; accessory after the fact to murder,

---

[2] The third superseding indictment charges that, beginning on a date unknown, but prior to January 1996, and continuing to the date of the third superseding indictment, various defendants were part of a criminal enterprise that historically encompassed the Uptown Central City area of New Orleans, primarily concentrated in the area bordered by Jackson Avenue, St. Andrew Street, Simon Bolivar Avenue, and Oretha Castle Haley Boulevard. Notably, the indictment alleges 101 overt acts that were committed by the defendants in furtherance of the conspiracy and to accomplish the objects of the conspiracy.

in violation of 18 U.S.C. § 3; money laundering conspiracy, in violation of 18 U.S.C. § 1956(h); and, finally, perjury, in violation of 18 U.S.C. § 1623.

The grave charges alleged in the indictment have been summarized and repeated throughout the procedural history of this case. This Order and Reasons assumes familiarity. A joint trial of all 13 defendants is set on June 6, 2015. Seven of the defendants now urge the Court to try their cases separately. The principal question before the Court is whether severance is necessary to ensure a fair trial.

I.

Rule 8 of the Federal Rules of Criminal Procedure governs the joinder of multiple offenses and defendants in the same indictment. Rule 8(a) allows an indictment to charge one defendant with multiple offenses if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). The requirements of Rule 8 are flexible: the offenses "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." See United States v. Butler, 429 F.3d 140, 146-47 (5 Cir. 2005)(quoting United States v. Fortenberry, 914 F.2d 671, 675 (5 Cir. 1990)). The propriety of joinder of offenses under Rule 8 is determined from the face of the allegations in the indictment.

See United States v. Posada-Rios, 153 F.3d 832, 862 (5 Cir. 1998). This Circuit broadly construes Rule 8 in favor of initial joinder of offenses. See Butler, 429 F.3d at 146.

Similarly, Rule 8(b) allows multiple defendants to be charged in the same indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b). The Rule specifies, however, that "[a]ll defendants need not be charged in each count." Id. It is the rule in this Circuit that persons indicted together should be tried together, especially in conspiracy cases. See United States v. McRae, 702 F.3d 806, 821 (5 Cir. 2012). But "the government need not allege a conspiracy in order to join defendants or counts." Id. at 820 (quoting United States v. Dennis, 645 F.2d 517, 520 (5 Cir. 1981). "Instead, [w]hat is required is a series of acts unified by some substantial identity of facts or participants." Id. (internal quotations omitted).

Rule 14 of the Federal Rules of Criminal Procedure recognizes the possibility that defendants who are properly joined under Rule 8 may nonetheless be unfairly prejudiced. The Rule thus provides, if joinder "appears to prejudice the defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." FED. R. CRIM. P. 14(a). It is the resounding preference

4

of federal courts, however, to jointly try defendants who are indicted together. See Zafiro v. United States, 506 U.S. 534, 537 (1993). "It is the rule, therefore, not the exception, that persons indicted together should be tried together, especially in conspiracy cases." United States v. McRae, 702 F.3d 806, 821 (5 Cir. 2012). The Court must weigh its interests in judicial economy against the risk of prejudice to a defendant in deciding whether a joint trial is appropriate. See Zafiro, 506 U.S. at 537.

This Circuit does not hold a generous attitude toward severance. "Severance is proper only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." McRae, 702 F.3d at 822 (internal quotations omitted). Less drastic measures, such as limiting jury instructions, "often will suffice to cure any risk of prejudice." Zafiro, 506 U.S. at 539; United States v. Daniels, 281 F.3d 168, 177 (5 Cir. 2002). Finally, this Court has wide discretion in determining whether severance is appropriate: "The denial of a severance motion will be reversed only for abuse of discretion, upon a showing of specific and compelling prejudice." United States v. Erwin, 793 F.2d 656, 665 (5 Cir. 1986).

The defendants rely on two primary theories in support of their motions to sever. First, they complain of irreparable prejudice from the voluminous evidence that will be offered against

their co-defendants, which they allege is unrelated to their own charges. Second, several defendants claim that their defenses are mutually antagonistic because they intend to accuse each other to exculpate themselves.

A.

To support their claims that a joint trial will cause undue prejudice, the defendants rely primarily on three Fifth Circuit cases. The Court observes this precedent in detail.

In <u>United States v. McRae</u>, 702 F.3d 806 (5 Cir. 2012), the Fifth Circuit held that David Warren, the police officer who shot Henry Glover in the infamous post-Katrina cover-up killing, should have been severed from the other two officers who who burned Glover's body and fabricated a cover-up police report. Although Warren was the shooter, it was not alleged that he played any role in the crimes of his co-defendants. The Court found that, if Warren had been tried alone, the trial would have lasted three days. Instead, Warren was subjected to a month-long trial in which inflammatory evidence was introduced about the burning of Glover's body and the attempt by fellow officers to hide their crimes by falsifying a police report. Notably, the government did not charge the defendants with conspiracy. The Court found, however, that the government inappropriately treated the defendants as conspirators, making it difficult for any jury to compartmentalize the evidence separately for each defendant. The Court concluded, "We do not

6

fault the district court for declining to sever Warren's case before trial, but as the trial progressed, however, and the evidence and testimony presented became irrelevant and unusable against Warren, and increasingly inflammatory to him, we are of the belief that limiting instructions could not mitigate the prejudice." Id. at 828.

In United States v. Cortinas, 142 F.3d 242 (5 Cir. 1998), twenty-eight members of a drug smuggling organization were indicted for conspiracy with intent to distribute marijuana, along with various other substantive offenses. Before the trial, four defendants filed motions to sever on the ground that trial evidence related to the actions of a motorcycle gang was highly prejudicial and irrelevant to their cases. Much of the evidence presented at trial focused on the violent and criminal nature of the motorcycle gang who collected debts for the drug organization, including a specific incident in which the gang "shot up" a delinquent customer's house, killing a fourteen year old boy. The Court reasoned that the two defendants who were not associated with the motorcycle gang and whose involvement with the drug conspiracy ended before the motorcycle gang was employed should have been severed from the trial. The Court concluded that "[l]imiting instructions given by the trial judge were inadequate to mitigate the prejudicial effect of the overwhelming testimony regarding the violent, criminal activities of the [motorcycle gang]." Id. at 248.

7

In <u>United States v. Erwin</u>, 793 F.2d 656 (5 Cir. 1993), the Fifth Circuit considered the issue of severance in a large, family drug conspiracy. There, the indictment charged twenty-four people with counts ranging from racketeering to perjury, including firearms violations, drug distribution, kidnappings, and one killing. Of six defendants who moved to sever, the Fifth Circuit concluded that only one should have been tried separately. The sole defendant was not charged with being a part of the conspiracy. She was only indicted on perjury charges in connection with concealing the organization's profits. The Court found that "very little of the mountainous evidence was usable against her, and almost none of it applied directly." <u>Id.</u> at 666.

B.

In addition to their claims of undue prejudice, several defendants move for severance on the ground that their defenses are mutually antagonistic. In some instances, antagonistic defenses may prejudice a defendant so greatly as to require severance. "Defenses are antagonistic if they are mutually exclusive or unreconcilable, that is, if the core of one defendant's defense is contradicted by that of another." <u>United States v. Neal</u>, 27 F.3d 1035, 1046 (5 Cir. 1994)(quoting <u>United States v. Rojas-Martinez</u>, 968 F.2d 415, 419 (5 Cir. 1992)). "Mutually antagonistic defenses are not prejudicial *per se*. Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief

8

to be granted, if any, to the district court's sound discretion." Zafiro v. United States, 506 U.S. 534, 538-39 (1993). As a result, the Supreme Court and this Circuit often find that cautious jury instructions are sufficient to eliminate any risk of prejudice. See i.d., at 506 U.S. 540-41; Neal, 27 F.3d at 1046-47; United States v. Daniels, 281 F.3d 168, 178 (5 Cir. 2002).

The controlling case on severance due to antagonistic defenses is Zafiro v. United States, 506 U.S. 534 (1993). In Zafiro, four defendants were indicted and tried together as members of a conspiracy to distribute illegal drugs. At trial, two defendants testified that they knew nothing of the conspiracy. The lawyer for a third defendant argued that his client was innocent and that the illegal drugs belonged solely to his co-defendant. The Supreme Court held that there was no unfair prejudice to the defendants as a result of the joint trial. The Court found dispositive that the district court properly instructed the jury to "give separate consideration to each individual defendant" and also "admonished the jury that opening and closing arguments are not evidence and that it should draw no inferences from a defendant's exercise of the right to silence." Id. at 541. The Court concluded that "[t]hese instructions sufficed to cure any possibility of prejudice." Id.

## II.

With the legal standards and instructive case law in mind, the

Court now turns to each of the defendants' motions.

## A. Shirley Hankton's Motion to Sever

Shirley Hankton is charged in Counts 1, 2, 23, and 24 of the indictment. Shirley is the mother of Telly Hankton and is accused of being a member of the RICO and drug conspiracies. According to the indictment, her role was an "organizer, communicator, and facilitator for the enterprise and its leaders." She is also accused of being a member of a money laundering conspiracy and committing perjury before a Grand Jury. Shirley contends that her involvement in the alleged RICO and drug conspiracies is tenuous. She points out that she is not charged with any specific acts of violence, possessing firearms, or distributing illicit drugs. She claims that these latter allegations against her co-defendants will spillover to impede her right to due process and a fair trial. Shirley compares herself to the defendants in McRae and Erwin whose trials were severed from their co-defendants'. The Court does not draw the same parallels.

The defendant in McRae was not indicted on conspiracy charges. To the contrary, Shirley is specifically charged with being a part of a drug conspiracy that lasted at least 16 years. Unlike the defendant in Erwin who was severed from the conspiracy case because of her minimal involvement, Shirley is accused of playing the role of organizer, facilitator, and communicator in the primary conspiracies charged in the indictment. Moreover, the charges

against Shirley's co-defendants comprise mostly of acts that were committed to maintain the conspiracy of which Shirley was allegedly a part. Although she may not have been directly involved in specific acts of violence or shootings, Shirley benefitted from the violent reputation that her co-conspirators engendered. Accordingly, at this time, Shirley has not shown a "serious risk" that a joint trial would "prevent a jury from making a reliable judgment about guilt or innocence." McRae, 702 F.3d at 822. Her motion to sever is DENIED.

### B. Nakia Hankton's Motion to Sever

Nakia Hankton is named in Counts 1, 2, and 3 of the indictment. Nakia is charged as a member of the RICO conspiracy and the conspiracies to distribute controlled substances and possess firearms. Nakia contends that he will be subjected to undue prejudice by standing trial alongside his co-defendants who are indicted on murder charges and other violent crimes. Nakia claims that his charges are "only tangentially relevant to the violent and brutal conduct" of his co-defendants, and very little evidence of the alleged violent crimes will apply directly to him. Nakia contends that he is like the defendants in Cortinas who were severed from the drug conspiracy because their participation ended before the violent motorcycle gang got involved. Nakia's analogy is unpersuasive.

Unlike the defendants in Cortinas, Nakia was allegedly

involved in the conspiracies during the time at which the drug-related killings and violence occurred. The violent crimes alleged against Nakia's co-defendants bolstered the criminal status of the organization of which Nakia was allegedly a member. Like Shirley, Nakia is charged with participating in the primary drug enterprise that is the subject of the indictment. Nakia is specifically accused of possessing firearms and distributing drugs in furtherance of the conspiracy. Nakia's alleged culpable involvement far exceeds that of the severed defendants in <u>Cortinas</u>. Nakia's motion to sever is DENIED.

### C. Andre Hankton's Motion to Sever

Andre Hankton is charged in Counts 3, 7, 8, and 9 of the indictment. According to the government, Andre was a member of the conspiracy to possess firearms. He is specifically accused of possessing a short-barreled shotgun. Andre is also charged alongside Telly Hankton in Counts 7 and 8 for the murder of Darnell Stewart.

Andre urges two different theories in his motion to sever: First, he claims that the counts in which he is charged are improperly joined in the indictment under Rule 8. Alternatively, he claims that, even if the counts are properly joined, they should now be severed due to unfair prejudice. The Court addresses each in turn.

### 1. Improper Joinder

Andre contends that his murder charges and weapons charges are unrelated to the remaining counts of the indictment because they do not arise out of the same series of acts or transactions. Andre points out that he is not named in the alleged RICO and drug conspiracies in Counts 1 and 2. He submits that he cannot be charged with murder in aid of racketeering in Count 7 unless he is also charged in Count 1 as a member of the RICO conspiracy. Likewise, he maintains he cannot be charged with conspiring to carry firearms in relation to a drug trafficking crime in Counts 3 and 8 unless he is also charged with the RICO and drug violations in Counts 1 and 2. In sum, Andre surmises that, because he was not charged in the RICO and drug conspiracies, his weapons and murder charges must be unrelated.

Andre offers no support for his theory that he cannot be charged with committing a crime in furtherance of the RICO conspiracy unless he is also included as a member of the conspiracy. The government, however, advances support for the opposite: "If an indictment charges RICO violations, offenses committed as part of the pattern of racketeering activity are properly joined even if the defendant objecting is not named in the RICO count." United States v. Krout, 66 F.3d 1420, 1429 (5 Cir. 1995). From the face of the charges alleged against Andre, they are unmistakably connected to the remaining counts in the indictment. That he is charged with crimes "in furtherance" of the RICO

conspiracy is enough to pass the broad standard of joinder under Rule 8.

## 2. Unfair Prejudice

Andre contends that he should be tried separately from Telly Hankton for the alleged murder of Darnell Stewart.[3] Andre recalls that he and Telly were prosecuted for Stewart's murder in state court. The judge in that case severed the defendants' trials, after which, Telly was convicted of the murder. Andre claims that if he is now required to stand trial jointly with Telly for the same murder, he will be unduly prejudiced.

The Court first notes that it is neither bound nor necessarily persuaded by any decisions made in state court. Under Rule 14 and this Circuit's precedent, Andre must show a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about his guilt or innocence. McRae, 702 F.3d at 822. Andre focuses on the Rules of Evidence, noting that it is likely that the government will successfully introduce evidence of Telly's state court conviction. Summarily, Andre then concludes that this possibility is extremely prejudicial to him. Andre's speculative argument about admissible evidence fails to identify a specific jeopardized trial right or provide a

---

[3] Darnell Stewart was murdered in front of a daiquiri shop on S. Claiborne street in New Orleans after a gun-blazing car chase in 2008. Telly Hankton was convicted of the murder in Louisiana state court.

plausible explanation as to why the jury could not make a reliable judgment of his own guilt or innocence even if Telly's conviction is admitted, which is presently speculation at best. Andre's motion to sever his trial from Telly Hankton's is DENIED.

### D. Walter Porter's Motion to Dismiss the Indictment or Sever Counts 4, 14, 21, and 22[4]

Walter Porter moves the Court to dismiss the indictment or, alternatively, to sever Counts 4, 14, 21, and 22.[5] Porter is charged in Counts 1, 3, 4, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, and 22 of the indictment. Porter was the alleged "gunman" of the criminal enterprise. He is charged with being a member of the RICO and gun conspiracies, three counts of being a felon in possession of a firearm, using a firearm in a drug crime and crime of violence, obstructing justice, and, most startling, he was allegedly involved in four separate murders in furtherance of the RICO conspiracy.

Although Porter styles his motion as one to dismiss the indictment or, alternatively, to sever certain counts, his memorandum contains no arguments or relevant case law in support of a dismissal of the indictment. The Court thus only considers his

---

[4] In Porter's initial motion, he requested in the alternate to sever only Counts 4 and 12. He then moved the Court to amend his motion to sever Counts 4, 14, 21, and 22 in the alternate. The Court granted his motion to amend on May 13, 2015.

[5] Porter has also filed two other motions that are addressed later in this Order and Reasons: a motion to sever himself from the indictment and a motion to sever Counts 15 and 16.

arguments to sever. Counts 14, 21, and 22 charge Porter with being a felon in possession of a firearm, and Count 4 charges him with conspiracy to obstruct justice. Porter contends that these offenses were improperly joined in the indictment under Rule 8(a) because they are unrelated to the overall criminal enterprise. His contentions are betrayed by the face of the allegations in the indictment.

As the alleged gunman of the criminal enterprise, it is directly pertinent to the RICO conspiracy that Walter Porter was in possession of guns. Moreover, the government points out that two of the gun possession charges were in connection with one of the murders that Porter allegedly committed in furtherance of the RICO conspiracy. Likewise, the government contends that the obstruction of justice charge in Count 4 alleges that Porter persuaded a non-felon to claim possession of a weapon that was actually possessed by an unindicted member of the enterprise who was a convicted felon. Connecting the charges even more, Porter is also indicted in the RICO conspiracy, which alleges, "Members of the enterprise and their associates committed, attempted to commit, and threatened to commit acts of violence in an effort to obstruct justice and thwart police investigations." Proof of the facts alleged in the obstruction of justice charge will run parallel to the proof required to establish the overarching RICO conspiracy. Walter Porter's motion to sever Counts 4, 14, 21, and 22 is DENIED.

### E. Walter Porter's Motion to Sever

Porter also moves the Court to sever him from the indictment entirely. Porter correctly points out that the government does not allege that he was a member of the drug conspiracy. He also notes that the specific acts alleged against him in the indictment all occurred within a brief interval of the seventeen year enterprise. The government admits that Porter was not involved until late in the conspiracy. Comparing himself to the police officer who was severed in <u>McRae</u>, Porter submits that he will be unfairly prejudiced by the mountainous drug-related evidence that will be presented against his co-defendants at trial.

Although Porter is not charged with any drug crimes, the heinous crimes for which he is charged were allegedly in furtherance of the drug enterprise. Walter Porter is charged in more counts of the indictment than the alleged leader of the organization, Telly Hankton. The likelihood of Porter being prejudiced by evidence presented against his co-defendants is tenuous in comparison to the reverse.[6] Porter has not shown a serious risk that a specific trial right would be compromised by a joint trial. Accordingly, Porter's motion to sever is DENIED.

### F. Telly Hankton, Walter Porter, and Thomas Hankton's Motions to Sever Counts 15 and 16

---

[6] Given the particularly egregious nature of the charges against Porter, the Court is mindful of the risk of prejudice to his co-defendants in a joint trial.

Telly Hankton, Thomas Hankton, and Walter Porter separately move the Court to sever Counts 15 and 16 from the indictment.[7]  In brief, those counts charge that Thomas paid Walter Porter to murder a witness, John Matthews, because Matthews was going to testify against Telly in the murder trial of Darnell Stewart. Matthews was shot 17 times but managed to survive. According to the government, Telly orchestrated the attempted murder from prison. The substance of the defendants' motions is the same: each is concerned that he will have to defend himself from both the prosecution of the government and the prosecution of his co-defendants. All three argue that their trials should be severed because their defenses are antagonistic and mutually exclusive.

_____

[7] In his motion, Telly Hankton also requests the Court to sever his trial from Derrick Smothers'. According to the government, an "unnamed associate" used a contraband cell phone from prison to call Derrick Smothers and tell him that Telly wanted Thomas Hankton to kill the witness, John Matthews. Smothers allegedly passed along the message to Thomas. Telly contends that Smothers is willing to testify favorably on his behalf with regard to these allegations.

To prevail on a severance claim based on the contention that a co-defendant would be able to testify favorably in a separate trial, "a defendant must establish a bona fide need for the codefendant's testimony, the substance of the testimony, the exculpatory nature and effect of the testimony, and that the codefendant would in fact testify." United States v. Neal, 27 F.3d 1035, 1047 (5 Cir. 1994). Telly's conclusory assertion that Derrick Smothers would deny the government's allegations falls well short of satisfying this standard.

Counsel for Telly Hankton stated that she would supplement his motion for severance with an affidavit from Derrick Smothers outlining the substance of his testimony. The Court did not find any such supplemental affidavit in the record.

The Court finds dispositive the fact that none of the defendants have alleged that his co-defendant will offer *actual evidence* that is antagonistic to his defense. Thomas claims that he will merely rely on the evidence the government is already offering to deny his involvement. Porter recounts the story of John Matthews' alleged photo identification of Thomas Hankton but makes no claim that he will offer any evidence at trial.[8] Indeed, the Court has yet to decide whether the photo identification evidence will even be admissible at trial.[9] Likewise, Telly claims that his defense will be simply to deny any involvement. None of the defendants presents an intent to testify against his co-defendant at trial. Rather, the defendants attempt to persuade the Court on the competing versions of each defense in light of the *government's* evidence. Denying involvement and reiterating evidence that the government already intends to present are not grounds for severance

---

[8]   Porter spends much time recounting the details of the police investigation following the shooting. Porter claims that, shortly after the shooting, while the victim, John Matthews, was hospitalized and heavily sedated, detective Desmond Pratt presented Matthews with a photo lineup containing a photograph of Thomas Hankton. According to Porter, Matthews selected two photos from the lineup, one of which was Thomas. Porter claims that, months later, the detective presented Matthews with another photo lineup, and this time, Matthews identified Thomas as the shooter. Based on this version of the facts, Porter claims his defense is antagonistic to Thomas's.

[9] Thomas Hankton has filed a motion to suppress John Matthews' identification of him as the shooter. Thomas claims that the procedures violated his due process rights because they were unnecessarily suggestive. Oral argument is tentatively set before the Court on the motion to suppress on February 26, 2015.

because of antagonistic defenses. See Zafiro, 506 U.S. at 540. "[A]
fair trial does not include the right to exclude relevant and
competent evidence." Id.

The defendants' positions in this case bear a strikingly
similar resemblance to the situation presented before the Supreme
Court in Zafiro. Like the defendants in Zafiro, Telly, Thomas, and
Porter claim they intend to deny involvement and blame their co-
defendants. Any risk of prejudice that may result from this kind of
defense "is of the type that can be cured with proper
instructions." Zafiro, 506 U.S. at 540. The Court concludes that
the same measures implemented in Zafiro will ensure a fair trial
for the defendants in this case. Accordingly, Telly Hankton, Walter
Porter, and Thomas Hankton's motions to sever Counts 15 and 16 from
the indictment are DENIED.

### G. Kevin Jackson's Motion for Reconsideration of Denial of Motion to Sever

Kevin Jackson is indicted in Counts 1, 2, 3, 10, and 11.
Jackson was allegedly a member of the RICO, drug, and firearm
conspiracies. He is charged alongside Telly Hankton and Walter
Porter in Counts 10 and 11 for the murder of Jessie Reed. Jackson
moves the Court to reconsider his motion to sever, which he filed
on October 10, 2013. In his previous motion, he sought severance
based on the prejudice he would suffer from being tried jointly
with the members of the Hankton organization. Notably, at that
time, Jackson was *not* charged as a member of the RICO and drug

20

conspiracies.[10] The Court denied Jackson's motion on January 13, 2014, rejecting his claims of unfair prejudice. Counterintuitively, now that Jackson *is* named as a member of the RICO and drug conspiracies,[11] he urges the Court to reconsider. Jackson simply reasserts the same arguments by referencing his previous motion. Given that Jackson is now charged as a member of the two primary conspiracies, the reasons stated in the Court's Order and Reasons denying Jackson's previous motion apply even more so. Kevin Jackson's motion for reconsideration is DENIED.

Because none of the defendants have established a serious risk that a joint trial would compromise a specific trial right, all of the defendants' motions are hereby DENIED.

New Orleans, Louisiana, November 2, 2015

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[10] The Court denied Jackson's previous motion based on the charges alleged in the Second Superseding Indictment. Since the Court's order, a Grand Jury has replaced that indictment with a Third Superseding Indictment.

[11] Jackson was not allegedly a member of the RICO and drug conspiracies in the Second Superseding Indictment. He was included in the conspiracies in the Third Superseding Indictment.

21