UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 12-01 |
| KEVIN JACKSON | SECTION: P |

### ORDER AND REASONS

Before the Court is the Motion to Modify Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and for Appointment of Counsel filed by defendant Kevin Jackson ("Jackson"),[1] a federal inmate serving two concurrent life sentences as a result of his conviction by a jury in the Eastern District of Louisiana of Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962(d)) and Murder in Aid of Racketeering Act (18 U.S.C. § 1959).[2] The Government opposes Jackson's motion. For all the reasons that follow, Jackson's motion is denied.

### I.  BACKGROUND[3]

Jackson was a member of the Hankton Enterprise,[4] a New Orleans-based drug gang led by Jackson's cousin, Telly Hankton ("Telly").[5] On June 19, 2014, a federal grand jury in New Orleans returned a 24-count Third Superseding Indictment, charging Jackson and twelve others with a host of federal crimes involving violations of nearly a dozen federal statutes.[6] While the subject indictment[7] contained allegations of murder, drug trafficking, money laundering, perjury, and

---

[1] R. Doc. 2273.
[2] R. Doc. 1854.
[3] The factual background and procedural history are drawn from the record of this case. For a more detailed factual background, see *United States v. Hankton*, 51 F.4th 578, 588–90 (5th Cir. 2022).
[4] An "enterprise" under federal RICO includes, among other things, any group of individuals whose activities affect interstate or foreign commerce. *See* 18 U.S.C. § 1959(b)(2).
[5] Because several persons in this Order and Reasons share the surname Hankton, the Court will sometimes refer to these persons by their first names for ease of reference.
[6] R. Doc. 670.
[7] R. Doc. 73.

1

other crimes, Kevin Jackson was indicted on charges of RICO conspiracy,[8] conspiracy to distribute 280 grams or more of cocaine base ("crack cocaine"),[9] conspiracy to distribute dangerous substances,[10] conspiracy to use and carry and to possess firearms,[11] murder in aid of racketeering,[12] and causing death through the use of a firearm.[13]

The case proceeded to trial in New Orleans, beginning on June 6, 2016.[14] At trial, the jury heard evidence that Jackson's cousin and gang leader, Telly, hired hitman Walter Porter ("Porter") to murder rival gang member Jesse Reed ("Reed") as payback for Reed's role in killing Telly's cousin and Hankton Enterprise member George Hankton. Because Porter did not know Reed, Porter met Telly and Jackson on June 20, 2009, to search for Reed. In the weeks leading up to Reed's killing, Jackson and Porter talked on the phone 239 times, and the jury heard evidence that Jackson delivered money to Porter for Reed's murder and that on the day of Reed's murder, Jackson and Porter communicated with each other 27 times. On June 20, 2009, Jackson, Telly, and Porter successfully located Reed, and Telly and Porter shot and killed Reed while Jackson was present. Porter unloaded both clips from both of his guns into Reed's face and body. In the process of killing him, Telly and Porter shot Reed 50 times.

After a 17-day trial that included dozens of exhibits and testimony from over 70 witnesses, a jury convicted Porter, Telly, Andre Hankton, and Jackson of a variety of federal crimes and acquitted them on others.[15] While Jackson was convicted in connection with a single murder – the killing of Reed – Telly and Porter were convicted of multiple murders and other crimes. Like

---

[8] *Id*. at Count One.
[9] *Id*.
[10] *Id*. at Count Two.
[11] *Id*. at Count Three.
[12] *Id*. at Count Ten.
[13] *Id*. at Count Eleven.
[14] R. Doc. 1517.
[15] R. Docs. 1600-1; 1602.

2

Jackson, Telly and Porter are serving life sentences. Jackson was convicted of Murder in Aid of Racketeering in connection with the death of Reed[16] and of RICO Conspiracy,[17] but he was acquitted on the charge that he personally caused Reed's death through the use of a firearm, and he was also acquitted on the drug conspiracy and weapons charges.[18]

The RICO murder count on which Jackson was convicted carried a mandatory sentence of either life in federal prison or death,[19] while the RICO conspiracy count carried a maximum sentence of up to life in prison.[20] After Jackson's trial and conviction, on November 9, 2016, Judge Martin L.C. Feldman sentenced Jackson to life in prison on both counts, with the sentences to run concurrently.[21] While the Fifth Circuit affirmed in part and vacated in part the convictions of Telly and Porter, the Fifth Circuit affirmed Jackson's conviction in its entirety.[22]

**II.   THE PRESENT MOTION**

Jackson seeks a modification of his sentence because he contends being sentenced to two concurrent life sentences is a disparate sentence when compared to the sentences received by his co-defendants, Telly and Porter, who also received life sentences, but who were personally involved in multiple murders unlike Jackson who was convicted of RICO murder in connection with the killing of Reed and RICO conspiracy. Jackson contends because his co-defendants personally participated in multiple other killings, and there is no evidence linking Jackson to any of those killings, "it is unjust that Jackson and his co-defendants should suffer identical punishment,"[23] and Jackson argues his sentence should be substantially modified.

---

[16] 18 U.S.C. § 1959(a)(1).
[17] 18 U.S.C. §§ 1962(d), 1963(a).
[18] R. Doc. 1600-1.
[19] 18 U.S.C. § 1959(a)(1).
[20] 18 U.S.C. § 1963(a).
[21] R. Doc. 1854.
[22] *United States v. Hankton*, 51 F.4th at 614.
[23] R. Doc. 2273-1, p. 5.

3

Jackson also contends he has exhausted his administrative remedies, and that the § 3553(a) factors weigh heavily in favor of his release. Jackson argues he is approaching 50 years of age;[24] has been in prison for 11 years;[25] has been married since 2006 to a woman who owns and runs a day care center; has maintained a close relationship with his wife and children during his incarceration; is not a danger to the community; and has completed numerous courses while incarcerated to prepare himself for life outside of prison. Jackson also contends, due to his indigency, that the Court should appoint counsel to represent him in connection with this motion.

### III.  LAW AND ANALYSIS

#### A.  Motion to Appoint Counsel

A federal defendant does not enjoy a constitutional right to appointed counsel in post-conviction proceedings.[26] The Fifth Circuit has made clear defendants enjoy no statutory or constitutional right to counsel in the context of 18 U.S.C. § 3582(c)(2) motions,[27] and while this is a motion under 18 U.S.C. § 3582(c)(1)(A), the motions are analogous.[28] A federal district court may appoint counsel in the interest of justice under certain circumstances, but appointment of counsel is not required when a defendant's motion does not involve complicated issues or where the defendant proves capable of representing himself *pro se*.[29]

Jackson's motion seeking the appointment of counsel was filed and signed by his trial counsel, and Jackson would like the Court to appoint the same counsel to represent him in

---

[24] Jackson has reached the age of 50 since the filing of his motion.
[25] Jackson has been incarcerated for nearly 12 years.
[26] *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further.").
[27] *United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995); *see also United States v. Joseph*, No. 15-307, 2020 WL 3128845, at *1–2 (E.D. La. June 12, 2020)) (citing *Whitebird*, 55 F.3d at 1011 and *United States v. Moore*, 400 F. App'x 851, 852 (5th Cir. 2010) (per curiam)).
[28] *United States v. Thompson*, No. 11-70, 2023 WL 2913446, at *1 (E.D. La. Apr. 12, 2023) (quoting *Joseph*, 2020 WL 3128845, at *2) (internal citations omitted).
[29] *See Thompson*, 2023 WL 2913446, at *2; *see also United States v. Drayton*, No. 10-20018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020) ("[A] claim for compassionate release is not particularly complex factually or legally.").

connection with this motion. The motion at issue is not a complex one, and Jackson's motion, along with its supporting memoranda and exhibits, as well as the supplemental and reply briefing filed by Jackson and the Government, have given the Court sufficient information to rule on Jackson's request for appointed counsel and his request for a sentence modification under § 3582(c)(1)(A).[30] While Jackson's motion involves important legal issues, his motion is not particularly complicated. In this particular case, the Court does not find the interests of justice require appointment of counsel, and the Court denies Jackson's request for appointed counsel.

### B. Modification of Sentence

Before a federal district court can consider the merits of a motion for reduction of sentence, a defendant must show he has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or that 30 days have passed since the receipt of such a request by the warden of the defendant's facility.[31]

#### 1. *Exhaustion of Administrative Remedies*

On a motion by the Bureau of Prisons ("BOP"), or by a defendant who has exhausted all BOP remedies, a federal district court may reduce or modify a defendant's term of imprisonment, probation, or supervised release, after considering the factors in 18 U.S.C. § 3553(a), if "extraordinary and compelling reasons warrant such a reduction."[32] A defendant satisfies the exhaustion requirement if he has submitted a request to the warden of the facility where he is incarcerated, requesting that the BOP bring a motion for compassionate release on his behalf.[33] If the defendant's request is denied, the defendant must pursue and exhaust "all administrative rights to appeal," but the exhaustion requirement is also satisfied if no action is taken after 30 days from

---

[30] *See* R. Docs. 2273; 2296; 2303; 2310; and 2315.
[31] 18 U.S.C. § 3582(c)(1)(A); *see also Thompson*, 2023 WL 2913446, at *2.
[32] *United States v. Chambliss*, 948 F.3d 691, 692 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).
[33] 18 U.S.C. § 3582(c)(1)(A).

the receipt of a request from the defendant to the warden.[34] The requirement that a defendant file a request with the BOP before filing a motion in federal court is not jurisdictional, but is a mandatory claim-processing rule.[35] Jackson contends, and the Government does not dispute, that Jackson exhausted his administrative requirements by sending a letter to the warden at Pollock, the facility in which Jackson was incarcerated at the time, to which the warden did not respond within 30 days.[36] Having satisfied itself that Jackson has carried his burden on exhaustion, the Court will focus its attention on whether Jackson's motion for modification of sentence should be granted under applicable law.

2. *Extraordinary and Compelling Reasons*

Once exhaustion has been demonstrated, a federal district court may grant a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), if after considering the applicable factors set forth in 18 U.S.C. § 3553(a), the district court finds "extraordinary and compelling" reasons warrant such a reduction.[37] And, a district court may deny the defendant's motion, before even reaching the § 3553(a) factors, if it determines the defendant has not identified extraordinary and compelling reasons justifying his release.[38] Congress has not defined what amounts to "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A)(i).[39] Congress' use of the undefined terms "extraordinary and compelling" in § 3582(c)(1)(A)(i), coupled with this Court's understanding of the plain and ordinary meaning of those words, suggests Congress intended those

---

[34] *Id.*
[35] *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, 141 S.Ct. 920, 208 L. Ed. 2d 466 (2020).
[36] In this case, Jackson's legal counsel wrote a letter to the warden at Pollock, dated February 27, 2023, to which there has been no response. *See* R. Doc. 2273-4; *see also* R. Doc. 2310, p. 12 ("[T]he United States has no reason to doubt that counsel filed such a request for Modification of Sentence to the Warden on February 27, 2023. Because 30 days have passed, it is deemed that he exhausted his administrative rights.").
[37] 18 U.S.C. § 3582(c)(1)(A)(i).
[38] *Thompson*, 2023 WL 2913446, at *2 (quoting *United States v. Jackson*, 27 F.4th 1088, 1093 n.8 (5th Cir. 2022)).
[39] *See United States v. Cooper*, 996 F.3d 282, 287 (5th Cir. 2021).

terms to encompass truly exceptional cases that fall within no other statutory category. This is an exceptionally high standard,[40] on which the burden rests with the defendant.[41]

Before granting a motion for reduction in sentence, the Court must also conclude a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission.[42] The Fifth Circuit has recognized that neither the Sentencing Commission's policy statement nor the commentary to it binds a federal district court addressing a prisoner's own motion under §3582.[43] Thus, while the policy statement may inform a district court's analysis, a district court is bound only by § 3582(c)(1)(A)(i) and, if it needs to reach them, the sentencing factors in § 3553(a).[44]

The United States Sentencing Commission amended the applicable policy on November 1, 2023 to provide that "[e]xtraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:" (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) the defendant having been a victim of abuse while in custody; (5) "other reasons" or (6) a change in the law that would "produce a gross disparity" between the defendant's sentence and the sentence likely to be imposed today if the defendant has served at least 10 years of an "unusually long sentence."[45] A federal court should also ensure the "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" before it reduces the defendant's term of imprisonment.[46]

---

[40] *See United States v. Shields*, No. 09-398, 2023 WL 6216606, at *3 (E.D. La. Sept. 25, 2023) (citing *United States v. McCoy*, 981 F.3d 271, 287–88 (4th Cir. 2020)).
[41] *United States v. Washington*, No. 16-19, 2020 WL 4000862, at *3 (E.D. La. July 15, 2020).
[42] 18 U.S.C. § 3582(c)(1)(A)(i).
[43] *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).
[44] *Id.*; *see also United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021).
[45] *See United States v. Harris*, No. 10-285, 2024 WL 2977889, at *3 (E.D. La. June 13, 2024); *see also* U.S.S.G. § 1B1.13(b)(1)–(6).
[46] U.S.S.G. § 1B1.13(a)(2).

Jackson argues the limited nature of his proven involvement in Reed's death does not warrant a life sentence, that a life sentence is far greater than necessary and constitutes an unwarranted sentencing disparity given the relative culpability of his co-defendants, and that Jackson would not pose a danger to the community if released.

In establishing the penalties for RICO murder, Congress determined that a just punishment for even a single murder under RICO would be life imprisonment or death. Jackson has been convicted of RICO murder, along with RICO conspiracy, and his conviction has been appealed without success. Jackson is correct that his co-defendants committed more murders than he committed and also played a more direct role in the murder of Reed, the murder that accounts for one of Jackson's life sentences, but the fact that, like Telly and Porter, Jackson is also serving a life sentence does not render Jackson's life sentence unjust or disparate. The Court respects the zealous advocacy advanced on Jackson's behalf, but, in the larger context of a case involving the murder of multiple individuals, the Court is not convinced Jackson's sentence was disparate. The argument, by a defendant who received a mandatory life sentence for one murder and a second, concurrent life sentence for being part of a RICO conspiracy that involved a host of federal crimes, that his sentence should be reduced because he was involved in the killing of fewer people than others in the same RICO case, rings hollow to the Court. Having carefully examined the record evidence regarding Jackson and all the arguments and materials submitted in connection with his motion, the Court finds no legal basis, at this time, to modify the sentence given by the sentencing judge. While the Court is mindful that Jackson has completed educational courses and other programs in an effort to become a productive citizen, should he ever be released from federal prison,[47] these positive steps, which the Court applauds, are simply not enough to constitute

---

[47] The Court views as very positive the fact that Jackson has completed courses in Spanish, Job Searching, Public Speaking, Small Business, Parenting, World Geography, Cholesterol Education, Exercise and Mental Health, Brain

extraordinary and compelling circumstances to justify a modification of his sentence at this time. Similarly, Jackson's arguments regarding his marriage and family, while commendable and duly noted by the Court, are not sufficient to constitute compelling and extraordinary circumstances justifying a modification of his sentence at this time.

Indeed, in analyzing Jackson's sentence against the factors in 18 U.S.C. § 3553(a), the Court does not find a basis for a modification at this time. The Court finds that Jackson's sentence of life in prison reflects the seriousness of the offenses for which he was convicted, promotes respect for the law, provides a just punishment for his crimes, serves as an adequate deterrence to similar criminal conduct, protects the public from further crimes by Jackson, and provides Jackson with needed educational and vocational training, medical care, and other correctional treatment in the most effective manner under the circumstances. While Jackson now seeks to distinguish his role as less than the roles of Telly and Porter in the death of Reed, and in the overall conspiracy, the Court is mindful that Jackson was a willing participant in a criminal enterprise that sold drugs and committed murder on a large scale. Jackson's life sentence was not a disparate sentence.

Moreover, the Court lacks assurance that the portion of § 3553(a) relating to public protection would be satisfied if a sentence modification, as requested by Jackson, would be given at this time. Indeed, before being sentenced to life in prison as a result of his convictions in this case, Jackson had previously committed manslaughter, battery, and arson. The Court finds that Jackson has failed to demonstrate he is no longer a threat to the community. The reduction of a duly authorized prison sentence, based upon the very words used in the applicable statute, is an "extraordinary" step to take, and it requires a federal district court to find a justification that is

---

Health and Aging, Health and Wellness, Mind and Body Health, and likely other courses as well. The Court encourages Mr. Jackson to continue to use his time in prison in a meaningful and productive manner.

9

more than sympathetic and, in fact, is nothing short of "compelling."[48] This Court does not find that Jackson has met his burden under applicable law.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendant Kevin Jackson's Motion to Modify Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and for Appointment of Counsel (R. Doc. 2273) is **DENIED**.

New Orleans, Louisiana, this 2nd day of July 2024.

*(signature)*
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

---

[48] *United States v. Shabazz*, No. 17-43, 2021 WL 4306129, at *3 (D.D.C. Sept. 22, 2021).